The next case the court will hear is Hall v. Millersville, Appellate No. 19-3275. My name is Jim Davey. I represent the Hall Appellants. I would like to reserve two minutes for rebuttal, please. That will be granted. Thank you. Your Honors, may it please the Court. Title IX offers schools a deal in return for accepting federal funds. They must take action to protect their own students from severe and pervasive sex-based harassment, of which they have knowledge and some ability to remedy. Isn't this issue really focused on whether or not Title IX gave this school sufficient notice for all schools that they could be liable for the acts of a student's guest? And if that's the test, because that seems to be what the district court really was leaning on for its grant of summary judgment, what authorities do you have to show the school should be on notice that it's responsible for a student's guest? Yes. Yes, Your Honor. I do think that that is the key issue here, and I think there's no – the idea of a student's guest as a category, that does not appear in the case law anywhere. The notice that you're talking about under the spending clause under Title IX comes from the case law, Jackson, Davis, all of the Title IX cases that refer to the school's own intentional sex-based discrimination, which is not acting in response to sex-based harassment by something of which they have – someone that they have knowledge about and some remedy that they have the ability to take and do not. There's no specific, either in the statute or in any of the case law, that says that it matters whether it's a professor, another student, or a third party. And in fact, if you look at the implementing regulations, if you look at the text of the cases like Davis that refers to non-agents, if you look at the OCR guidance, all of the surrounding legal regime makes very clear that certain types of non-agents, including explicitly third parties, if they know about that person committing sex-based harassment and they don't remedy it, and it's within their power to do so, they are on notice that they will face Title IX liability. I think if you look at – again, even the district court referred to this when it talked about visiting professors, visiting student athletes. And those are, of course, third parties that are not professors, they're not peer students. Those folks are sitting in a little bit of a different category because the university invited them to the school, where in this circumstance you have a student inviting someone to the school. Absolutely. Yes, Your Honor. And I think, again, this gets to the core issue here, which is the distinction of who did the inviting, whether or not he was invited by Carly Hall or whether or not the school had invited him. It gets to the question of control in the sense that, as a matter of fact, it's possible that the school might have less control over someone that a student invites than they invite, of course. But that's a fact question, first of all. And second of all, in this case, there's tons of evidence in the record that they had some control over Mr. Orestieta. And the district court even found that. The district court said that a reasonable jury could find that they had control over Mr. Orestieta. And if you consider specifically – you know, Davis talks about both the harasser and the context. And if you consider that this happened in a dorm, and if you consider that the dorm in question had 24-hour check-in, a visitor who was staying overnight could only do so three nights in a row, eight nights a month. They had to leave an ID if they stayed overnight at the check-in desk. They had already removed Mr. Orestieta from campus pursuant to their own – first, when the police responded to her room for the first assault, and second, pursuant to their own policy that had nothing to do with Carly Hall at all. What do you do with the one fact in the record that deals with the fact that supposedly Carly allowed him to enter through a back door? Yes, Your Honor. And so that was not within any of the places where the controls were reasonably imposed. That is correct, Your Honor. I have two answers to that. The first is that there's no evidence in the record that that happened that night especially. Further, it's very equivocal in the record. It talks about that happening occasionally. And I think on a summary judgment posture especially, it should be construed that at least the rest of the time he was coming through the front. And I think that that also – I guess my second categorical answer to that is that one of the things that the school could have done but did not do here was issue either a no-trespass order or a no-contact order of some kind. And if the school issues a no-trespass order, it doesn't – I mean, of course he might ignore it, but it doesn't – that's not specific to what entrance of the dorm he would come through. And, again, the school did no investigation. The school did not reach out to Carly Hall at all. It did not what? It did not reach out to Carly Hall at all. I'm sorry that that rhymed a little bit. But they didn't reach out to Carly Hall, didn't attempt to issue a no-contact or a no-trespass order, did not refer him to authorities in any way despite knowing that there was an assault that had happened. Well, they did refer him. I mean, the RA called the police. Certainly. But, I mean, there was no criminal investigation that happened based on a physical assault. They took him off campus and said go anyway. Right, but there was also no complaint made by Carly Hall. That is correct, yes. That is correct? There's no complaint? Yes. There's this incident, a serious incident on October 4th that gets Greg removed from the hall, the board hall. From then till the night of the murder, what else is there in the record that shows that Millersville should have done something? I think there are several things in the record. First, Sarah Weyberg, the RA, wrote a report that went to Ron Weoffe. And under the school's own policy, that report stated a violation of the school's policies and triggered What was the violation? A sex-based intimate partner What? A situation of intimate partner violence that was sex-based. And I think the school has conceded that. But that was their policy. That wasn't theirs. I guess what I'm struggling with in this case is I don't see that there are any facts in dispute here. I think that's broadly correct, yes, sir. You know, if you knock out the back door, and I agree with you, there's this question, was the back door used? Yes, the back door was used, but we don't know when the back door was used. We don't know if it was used in October. We don't know if it was used in February. I don't see any facts in dispute. I think that's right, Your Honor. Okay, so if there are no facts in dispute, isn't this question both for the district court and for us, for us to determine as a matter of law whether there's a Title IX violation? Yes. Okay. You agree with that? I broadly agree, yes. Okay, the district court may have gotten it wrong in saying that, you know, defined by any court, then we're not going to say this satisfies it. Even if we say, well, that's a wrong analysis, Davis gives you a formula to evaluate whether it's a student or non-student, don't we then have to look at whether the evidence is sufficient to support a Title IX violation as a matter of law? Yes. I think there's two answers to that. I think the first answer is that if you decide that the district court was incorrect as a matter of law and that there is possibly a Title IX claim here, you could remand to the district court to redo the analysis based on, again, how you state the law. But I also think that, again, the district court went through all of the substantive elements. Yeah, what do we do with that? Let's say granted the motion for summary judgment, I'm not sure they should have done that analysis. Your Honor, I mean, I was not, I did not represent the halls below, and so I can't speak to exactly how that came about. And, again, I think it's certainly a well-reasoned opinion. I think that there is enough in the record that even if you look at the record now, you could, you know, remand and say that it's ready for trial, partly because there's such clear evidence on the substantive elements. You know, it's very clear that the harassment was sex-based. It's very clear that it was severe and pervasive. It's very clear that an appropriate person had actual knowledge. And it's very clear that the school did nothing at all. And so I don't think you need to, again, you could remand. You absolutely could remand for the district court to redo that analysis, but I don't think there's any need for that here. If you want me to. Before the district court, the plaintiffs argued there was a disputed issue of fact on each of the elements, correct? I mean, the defense moved for summary judgment, and when you oppose summary judgment, you say, you know, we could go to a trial and we could, you know, yes. Right. I asked that because in following up what Judge Fisher was saying, those are two different things. One is, as a matter of law, on the undisputed factual record, we can make a conclusion as to each element. Yes. That was not the requested relief, as I understand it, before the district court in opposition to the summary judgment motion. The summary judgment opposition was there's disputed issues of fact. The case needs to go to the jury, correct? Yes, yes. Sorry, to be clear, I guess what I take Judge Fisher's question to be is, should you affirm on an alternative basis? And I think the answer to that is absolutely not. I think that there's enough evidence in the record that on each of the substantive elements of liability, of course the halls could. I understand what you're saying there. Okay. Yes. Yeah, I, again, if you want to talk about the substantive elements, we could do that. I mean, I think the district court is very clear about what's in the record and what's not. The harassment is unquestionably sex-based. There's sexual assault involved. The harassment is. I guess if we're looking at this as a question of law, where is all the elements, all the Title IX elements? Okay. Yeah. Can you establish all of them? Yes. Absolutely. Okay. Yes. The, again, the elements, there's, the harassment has to be sex-based. That's easily satisfied. There was sexual assault issue here. Can I direct your attention to one that I'd like? It's causation. Yes. Because I know we're going to go on the severe and pervasive. Yes. On causation. One fact in the record is a four-month gap between the first incident and the murder. During that period, according to the record, perpetrator lived with the Hall family. Over winter break. Yes. And they had lived there before, but we're going to focus on that one period. Does that break causation? No, Your Honor. And there's a few reasons for that. The first is that I think, and I commend the amicus brief to your attention on this point. If you look at the dynamics of intimate partner violence, it's unquestionably true that someone is less likely to abuse someone with insight of her own mother than, you know, when they're out of that situation. And I actually think that this gets at a really important point here, which is that the school, this is what Title IX is for. The school had knowledge. Because Sarah Weiberg wrote a report. Renea Flexer called three times. Her mother didn't. It's in both parties' briefs. Her mother didn't find out about any of this until after Carly Hall had been murdered. And so if you think about, again, the purpose of Title IX, protecting students from sex-based discrimination, who was better positioned to do that? The school. Not her mother, who didn't find out until after. And so from a causation perspective, I don't think that her having him, again, winter break, whether it's three weeks, whatever, I don't think that that has anything to do with that, no. Where is the deliberate indifference? What do you say, what action on behalf of Millersville constitutes deliberate indifference? Your Honor, it's the fact that they didn't take any action. I think that when you look at what the various cases say about what a school can do, they didn't do any of those things. No, this is not a State, this is not a 14th Amendment due process case. But under our State-created danger jurisprudence, don't we need to have an affirmative act? So this is completely separate from State-created danger. I understand that, Your Honor, and I know that. I mean, I read the opinions of this Court. I know that some people are questioning that. This has nothing to do with that. What case suggests that under Title IX that no action is sufficient to show deliberate indifference? So actually, this is Freeburg Community, which is a district court case, actually goes so far as to say that when a school does nothing, the plaintiff can get summary judgment on deliberate indifference. And if you look at Morrell out of the Tenth Circuit, if you look at cases all over, even if you look at Williams where there were a delay in taking action, the delay amounts to deliberate indifference if it leads to more harassment in the interim. This case where they didn't take any action at all, I don't think there's really a question about deliberate indifference, no. I see that I'm in the red, and so unless you have any other questions, I'm happy to see you on rebuttal. We'll see you on rebuttal. Thank you. May it please the Court. I'm Claudia Tesoro. I'm from the Attorney General's Office, and as you obviously know, I'm representing the Athelene Millersville University. There was only one person legally responsible for the tragic killing of Carly Hall, and that person is in prison now for what he did. There's a completely separate issue in front of the Court, obviously, but Title IX does not extend to this horrible scenario. The District Court's actual decision said that Greg Oresteda's criminal violence was not grounds for liability because he did not fall within one of the categories of wrongdoer that has ever led to a finding of potential Title IX liability. How is that supported in light of two things? One, the Department of Education Office of Civil Rights regulation, that includes campus guests as coverage, but more importantly, Millersville's own Title IX sexual misconduct policy says it covers visitors and third parties. So doesn't that undercut a conclusion that the school was not on notice that it could be held liable when it itself said the policy applies to visitors? I don't think so. First of all, I just think as a technical matter, the inclusion in Millersville policy of the language you refer to, which I believe is a result of the language in the regulatory guidance, is not itself the law. The law comes from the Supreme Court precedents, including, obviously, the ones we've already talked about. But let's talk about Davis. Davis, your adversary, noted some language in Davis that suggests that non-agents could also be held liable under Title IX. It has that phrase non-agents, but it certainly doesn't say that open-endedly non-agents can be held liable under any scenario. And the problem we have in this case, trying to reach a legal decision based on the law as it has evolved, because as was pointed out during my friend's argument, the facts themselves are not really in dispute, not in dispute. There is no law that has ever said that an incident such as this can give rise to Title IX liability. The question of- So should that stop us from deciding that this is the case in which Title IX liability has been shown? Well, obviously, it's up to you to make that decision and not up to me. I think it should stop you because, most critically, the Davis case doesn't support stretching liability this far. If you follow- But doesn't Davis give us a road map as to how to evaluate liability that arises from conduct of a third party, a non-student third party? Doesn't that give us a road map? Talks about notice, talks about control? No, I wouldn't read it that way. Davis was itself a limited extension of the relatively narrow cause of action that had already evolved in the previous Supreme Court cases. And Davis says right in it that while there may be situations, abstractly speaking, about certain non-agents, Title IX narrowly circumscribes the set of parties whose known acts of sexual harassment can trigger some duty to respond. And then Davis goes on to say something that I don't think was mentioned earlier but is in the briefs, that there are two things that have to be examined, control over the harasser and control over the environment where the event occurs. Control over the environment here is easier for the plaintiff to argue. Control over the harasser is not so easy. As a matter of fact, there was no control over the harasser. But the other side argues, halls argue that there was control, that there was a monitoring system in place at Bard Hall, and that there were RAs in place whose one of their specific duties was to make sure that there was not conduct that would be violative of Title IX. I'm not sure that the RA's duties were that precisely defined. But the only thing they have to point to is that students' guests are supposed to sign in when they come to visit a dormitory. That's the extent of control. There's also case law. But just a minute. Earlier on, they actually removed him from the campus based upon a complaint. If you have the power to remove somebody, isn't that exercising a substantial degree of control? I think that the first incident, the October incident, which is what you're referring to. Right, October 14th. Was a situation where Carly herself initiated the request to get him out of here. And the security, the campus security police came and took him out. That was not necessarily a concession that they have control over everything that a visitor does. It was a reasonable and responsible response to a particular event that had happened that Carly wanted him to leave. They took him away. They did exactly what she asked to have done. And that, it appeared, addressed the problem. But Mr. Davey says that Millersville's failure to follow up on this constitutes their lack of any investigation. Constitutes deliberate indifference. How do you answer that question? I think that's a misunderstanding of what deliberate indifference means. Tell us what it means. Well, as I think you were suggesting earlier, Judge Fischer, deliberate indifference is a high standard, a very demanding standard to meet. It does not mean negligence or carelessness or inattentiveness. It means, among other things, in this context, an explicit decision not to take action, which is not what we had then. Isn't the failure to investigate an intentional decision not to pursue any investigation further? Well, a decision to not take action is, I guess you, I can't disagree. It's a decision of sorts. But if it's a careless decision or the wrong decision or an inappropriate decision, which is the thrust of the argument here, that is not deliberate indifference. But in each of the instances Judge Fischer mentions the police, we know that the victim's roommate's mother called the police, called the counseling service. In each of those times she was told, we can't help you, it's got to come from the complainant. So there was an intentionality there to decline to act. Well, I think to say that the person who answered the phone, and we don't even know who she spoke to, binds the university by giving incomplete or incorrect information. It wasn't just the counseling center. Even the police, according to her testimony, responded in a similar way. Well, but the concession, if you want to call it that, in the record that they want to rely on, as I understand it, is that the police person said or should have said, this should have been relayed to the Title IX coordinator. And I suggest that if that had occurred, remember that Carly's roommate told her mother who made these calls. It's not like the most solid reporting that ever happened. And it wasn't recognized as significant at the time. But it should have been when they had records of the fact that the gentleman in question here was removed on October 4th. Well, they did have, somewhere in the university, they had records that the gentleman was removed. But they also had the RA's report who communicated it to her supervisor together with someone who had Title IX authority. So the university was on notice and people took action to provide information, but there was inaction in response. How do we not find that to be indifference? I don't accept the idea that the incomplete response to the phone calls was inaction in the face of an incident that required further action. Because the incident itself had been addressed. I think the point that you brought out, Judge Schwartz, about the passage of time after that incident is a very important one. I understand that intimate partner violence is a, you know, complex issue. But it is not a reasonable inference from the undisputed facts to assume that that incident, when two young people had an issue after a fraternity party or whatever kind of party they were at, that that in and of itself means that there was going to be a further problem. And it certainly doesn't mean that it was going to happen immediately. It didn't happen immediately. Four months passed before there was any indication of another problem. But that would be the kind of thing a jury would decide, right, how much weight to give to the passage of time. Well, I think that because Title IX requires that a university be on notice of its potential liability so that it can address problems as necessary, there was no notice at that phase that there was such a big problem that it required additional work. The causal connection is one thing. The lack of deliberate indifference, even if it was some sort of ineptitude, is another. The lack of an affirmative choice not to remedy the situation the way that now in hindsight people think it maybe should have been remedied is another. And I ask the Court to take into account the implications of going beyond Davis in this case. Davis very clearly talks about context, as we've discussed in this context, but it also talks about authority over the harasser and the ability to discipline the harasser. That is obvious. If a professor hits on a student, the professor can be disciplined within the faculty disciplinary process. If one student abuses another student and it is reported, the university has an elaborate student conduct procedure and can take action. But there's case law out there, particularly one that dealt with visiting student athletes. The high schoolers would come into the university, they were provided more entertainment than just throwing the football. I'm sure you're familiar with the case. And as a result, that was found to be a Title IX violation. And from your theory, the university could not have disciplined those students. They were high schoolers. But nonetheless, that circuit court found control over those invitees. I'm sorry to interrupt. The problem with drawing too much of a conclusion from that is that the university was involved in bringing those kids to the campus. They were not the guests of a student, a young adult student who chose to, for whatever reason, invite her guest. The university in the story, in the situation with the student athletes and giving them a good time and all of that, was partly part of the process whereby these individuals came to the campus and misbehaved. So it's your position on behalf of the university that there is not requisite control over a student's invitee? That is correct. Even if you do rely or try to rely on the fact that the dorm has a sign-in process. That is not control over the invitee. It's control over the building. And if that's the case, then why does Millerville's Title IX sexual misconduct policy have a provision that says this applies to visitors and third parties? Because, first of all, I don't think it's an absolute provision that it applies to any visitor, any time, no matter what happens or how it comes about. That would be very unwieldy. The problem with adopting the view that is being urged here is that there's no limit. How could Millersville, after the first incident, let's say, how could they fulfill their duty, not just to Carly, but to every one of the thousands of students that they have? How could they keep track of everybody's social interactions and their invitations to other people to come and visit them? You'd almost have to say no visitors. That's true, Judge Fischer. And frankly, in light of the case law that talks about the independence of young adults who are college student age people, that would be frightful. And people would probably make a whole different set of lawsuits about that. That would be terribly frightful. The amount of misbehavior that goes on on college campuses is probably pretty significant. I see my light has just turned off, so we ask that you affirm the judgment of the District Court. Thank you. You're not asking us to affirm this, however, on the same basis that the District Court granted summary judgment, are you? Well, the District Court's summary judgment ruling was that this incident does not fall within the realm of Title IX. Okay. I mean, the court, the District Court, I think, at least the way I read this, I have to agree with Mr. Davies' assessment of this. The District Court essentially said, there's no case law out there that says you're liable for the conduct of third parties under Title IX. Isn't that, in essence, what they said? Well, I think it said more than that, because what they did... They said more than that, but that was the principal basis for the District Court's decision. And then it went on to analyze the various facts that, if there was liability, could have made Millersville liable. It seems to me here, the question is in this case. Yes, there could be liability for third-party conduct, but do the facts in this case support Title IX liability? Well, maybe I'm saying the same thing in slightly different words, but I think what the District Court did wasn't quite as narrow as your summary just suggested. I think the District Court recognized that in the Davies' decision, and the authorities quoted there, there was no liability. And in the regulations and so on, there are some indications of possible third-party situations that would give rise to liability. But there's never, and I emphasize this from my own client's position now, there's never been anything that found potential liability in a scenario like this. And if you extend Title IX that far, it is limitless and impossible to administer. Thank you. I hope you'll tell us why we shouldn't be as concerned as your adversary raises with the limitations. Absolutely, Your Honor. I was going to make three points on rebuttal, and that was going to be one of them. The idea that this would, that any opinion that you write would make liability open-ended, nothing could be further from the truth. They raised in their brief, and again at argument, my colleague noted that liability would be open-ended, and that's just not true. If someone, if a visitor comes onto campus, and the school, no matter what danger they impose, if the school doesn't know about that danger in advance, they do not face Title IX liability. If it happens somewhere on a field at the edge of campus where the school has less control, the school almost certainly does not have liability. It takes knowledge in advance of a substantial risk of sex-based discrimination that's going to occur, and deliberate indifference to that. And, you know, what you're almost arguing for is a one-strike-you're-out policy. If you come on campus and you cause any trouble, you're out and you're never coming back in. Not necessarily, Your Honor. I think this is, I mean, let's be very clear, this is a fact question. That gets to deliberate indifference after you've gotten past the threshold question of could there possibly be liability. But as a matter of fact, if someone comes on campus, there's an assault, there's a report, there's, you know, a roommate's mother who calls three times, it's possible that something other than a no-trespass order would be effective. It's possible that that's some sort of counseling, something like that. If you have knowledge of a substantial risk of sex-based harassment, you do have to do something. And I think, again, you know, my second point was going to be, you know, my colleague talked about there being no law on this. And first, you know, Judge Fischer, as you know from Mercy Catholic, the fact that there is not necessarily, like, absolutely a case on point does not mean that there's not liability. But second, Judge Schwartz, as you noted, there are tons of cases that are embraced liability in these circumstances, including the ones about the football players, but also Karasek in the Ninth Circuit, which is a visiting guest lecturer, who's a visiting lecturer, Doe v. Howard University out of DDC, which is about a former student who the school had no further disciplinary authority over who came to campus. And so I just, I think that it's, the idea that this would open liability is just not correct. And as you noted, Judge Schwartz, you know, their own policy would not need to be changed. Their own policy already covered the situation. And of course, that's not binding on this Court, but it's indicative of what Millersville understood the law to be. My last point, which I just want to say really quickly, I recognize that I'm in the red, is that my colleague started off her argument by saying that only one person was legally responsible, and that's just not how Title IX works. In every Title IX case, someone else is legally responsible for the discrete event. The problem is that the school's deliberate indifference gives rise to liability for the school. And so for those reasons, I would urge you to reverse. Thank you. We thank counsel again for great arguments and very helpful briefing, and the Court will take the matter under advisement.